## SAMUEL S. PARKER *versus* NEHEMIAH FLAGG & al.

When exceptions are taken on the trial of an action, every matter of law intended to be insisted on, should, at sometime during the trial, be brought particularly to the notice of the Court. And no question can be raised on the argument, which does not appear from the exceptions to have been made at the trial.

Unless a carrier by water limits his responsibility by the terms of a bill of lading or otherwise, he cannot escape from the obligation to deliver a shipment according to its destination, unless prevented by the public enemy or by the act of God. A loss of the property by an accidental fire furnishes no sufficient excuse; although the carrier might be excused, if the non-delivery was caused by lightning.

THIS case came before the Court upon the following exceptions, taken by the counsel for the defendants to the ruling of TENNEY J. presiding at the trial.

This was an action of assumpsit to recover of the defendants, as owners of the schooner Mary and as common carri-

ers, pay for certain property, shipped on board of said schooner by the plaintiff in the fall of 1841. It was admitted by the defendants, that the owners of the vessel were common carriers. In order to prove that the defendants were owners, the plaintiff called one Sawyer, and while upon the stand, drew out from him declarations of Flagg and Safford, two of the defendants, tending to show that they were owners; in answer to the plaintiff's question, he said he would not say, whether they said they were owners or part owners. The witness, also testified, that in other conversations, which he had with Capt. William Lamson, the master of the vessel, and one of the defendants, that said William Lamson told him, that Edwin Lamson, another of the defendants, Safford and Flagg, owned the vessel. This was on examination in chief. After the witness was turned over to the other party, he stated that he had several conversations with Safford and Flagg, about the schooner, and that he could not distinguish the particular conversation about which he had testified from the others. Hereupon the defendants' counsel contended, that the witness should be allowed to state all Safford and Flagg told him at any of the conversations he had with them; but the Court ruled otherwise, confining him to the time, to which his attention had been called by the plaintiff. The counsel for the defendants then requested the witness to state all that William Lamson told him at the time of the conversation to which he referred to in his testimony. The witness then testified that William Lamson, at that time, told him that Edwin Lamson of Boston, owned one half, Flagg one quarter, and Safford one quarter, and he, William Lamson, run her on shares.

The plaintiff's counsel here objected that the testimony of the witness, as to what William Lamson told him in the examination in chief, was voluntary. The defendants' counsel contended that as that testimony came out on examination in chief without objection, they were entitled to all William Lamson then said, even if it were a voluntary statement, which they denied, but on the contrary, said it was drawn from the witness by the plaintiff's counsel as before stated;

but the Court, understanding it to be a statement not in answer to a question put by the plaintiff, allowed the plaintiff's counsel to elect whether he would have the aforesaid statement of William Lamson in the case or out ; and the plaintiff elected not to have it in the case, and the Judge directed the jury to disregard it, and also his statement which came out on cross-examination. On the ground of negligence, the Judge instructed the jury, that if the master wished to have a fire on board his vessel, it was at his own risk or that of the owners; and if the hay on board the vessel, that carried it, was secured against a fire kindled on board in the best way imaginable, still if it took fire either from the fire on board the same vessel, or from the steamboat, or any other vessel, while passing, its owners would be liable. Much evidence was introduced by the plaintiff, tending to prove, that the hay was so stowed around the galley in which a fire was kindled, before the hay and other property was discovered to be on fire, as to expose it to be burnt, and that the fire itself was negligently managed ; and much on the other side of a contrary tendency. The judge directed the jury to find from the evidence and return an answer to the special question, in addition to their general verdict, in substance, " whether the master and crew of the vessel used all the diligence and care which prudent and cautious men in like business usually employ for the safety and preservation of like property, under like circumstances, assuming that the master had a right to kindle a fire on board his vessel." The jury returned a verdict for the plaintiff, and answered the special question in the negative. To the above rulings and instruction to the jury the defendants except.

*Vose*, argued for the defendants, citing 1 Chitty on Pl. 31, 32 ; 18 Maine R. 174 ; 1 Stark. Ev. 372 ; 8 Pick. 551 ; Story on Bailm. 329, 330.

*Evans* argued for the plaintiff.

The opinion of the Court was afterwards drawn up by

WHITMAN C. J. — From the bill of exceptions, it would seem, that no evidence of ownership was offered, except as to

two of the four defendants. This, at first, led the Court to the conclusion, that the ruling of the Judge at the trial, taken in connection with his instruction to the jury, amounted to an intimation to them, that the plaintiff was entitled to recover, without proof of ownership by the others. Upon a re-examination, however, we are induced to doubt as to the correctness of such a conclusion. There does not appear to have been any ruling, explicitly, upon the point; and we do not discover, that any was desired by the counsel for the defendants. Where exceptions are taken it is unquestionably proper, that every matter of law, intended to be insisted on, should, at some time during the trial, be brought particularly to the notice of the Court. As we do not, on the whole, perceive that the attention of the Court was particularly called to the consideration of the law in reference to the point of ownership of the defendants in the vessel, we may well consider any such question, though now raised in argument, as having been then waived.

In reference to the ruling of the Court, as to the liability of common carriers, we see no reason to doubt its correctness. Unless they limit their responsibility, by the terms of a bill of lading or otherwise, they cannot escape from the obligation to deliver a shipment according to its destination, unless prevented by the public enemy or the act of God. The disaster complained of was not attributable to any such cause. If the accident had accrued from lightning, the non-delivery of the hay might be excusable.

The ruling, that the disclosure of William Lamson might, at the option of the plaintiff, be wholly rejected, forms no essential ground of complaint on the part of the defendants. Nothing fell from him, which would have been conclusive upon the plaintiff. He might still have shown that the facts were otherwise, than as stated by him in his discourse with the witness, as testified by him on cross-examination. And besides, the statements proved to have been made by him were in reference to the ownership of the vessel, which, as before stated, we think must be considered as not now a legitimate subject of controversey.                    *Exceptions overruled.*